IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOHN MASSI, | : | |
| --- | --- | --- |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | NO. 12-1309 |

**M E M O R A N D U M**

PRATTER, J.  MARCH 25TH , 2013

John Massi has brought this wide-ranging lawsuit against the City of Philadelphia, the Philadelphia Police Department, Philadelphia Police Commissioner Charles Ramsey, Deputy Police Commissioner Kevin Bethel, and police officers Anthony Washington, Bruce Allen, and Dennis Vest. The Defendants have responded by filing a motion to partially dismiss Mr. Massi's complaint for failure to state a claim. For the following reasons, the motion is granted in part and denied in part.

## I. Factual Background and Procedural History

### A. Factual Allegations

In his complaint, Mr. Massi alleges that he is a Caucasian male who has served as a police officer for the City of Philadelphia since 1997. In 2003, Mr. Massi was supervised by Mr. Allen, an African-American officer. Mr. Allen allegedly denied Mr. Massi an assignment in the Police Department's bike patrol unit, and then told Mr. Massi that "I want only my people in the bike patrol unit." Additionally, on May 2, 2003, Mr. Allen allegedly denied Mr. Massi the right to work an overtime detail at a grocery store, but allowed African-American police officers to work second jobs. Mr. Massi filed a complaint with the Department's equal employment

1

opportunity unit regarding Mr. Allen's actions, but his complaint was dismissed, allegedly because of an improper investigation conducted by two other African-American officers.

In May 2009, Mr. Washington, another African-American police officer, became Mr. Massi's immediate supervisor. Mr. Massi alleges that an unnamed officer who knew Mr. Washington subsequently informed Mr. Massi that Mr. Washington "hates white males." During the first two months in which he supervised Mr. Massi, Mr. Washington allegedly inquired into the extent of Mr. Massi's sexual activity within the Department, repeatedly made sexually lewd comments in Mr. Massi's presence, and groped himself in front of Mr. Massi, who was assigned to "Five Squad," a special platoon that reported directly to Mr. Washington. On August 6, 2009, Mr. Washington allegedly stared at a female's buttocks while he was with Mr. Massi, and then became agitated when Mr. Massi did not also stare at the woman.

Mr. Massi also alleges that Mr. Washington created a hostile work environment for him in a variety of ways, including by barring him from disciplining subordinate officers, publicly berating and cursing at him on multiple occasions, excluding him from "African-American only" officer meetings, assigning him to "redundant duties and tasks," denying and attempting to deny him vacation, and forcing him to work at night. Mr. Massi alleges that this last action violated Department policy because it was taken without the requisite 30 days' notice and because five officers with less seniority should have been moved to the night shift before him. Additionally, Mr. Washington allegedly ordered Mr. Massi to come to work while he was on leave for a hand injury.

On March 11, 2010, one day after Mr. Washington allegedly subjected Mr. Massi to an obscenity-laden verbal tirade, Mr. Bethel, the Deputy Police Commissioner, arranged for Mr. Massi to transfer to a different police district. On March 18, 2010, Mr. Massi filed a complaint

with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC) in which he alleged that Mr. Washington had harassed him and discriminated against him. The following day, Mr. Massi was allegedly ordered to "report to DPR 3x11 tour."[1]

On June 22, 2010, after Mr. Massi transferred out of his command, Mr. Washington allegedly contacted a police union official to ask why Mr. Massi was attending a union conference. One week later, Mr. Washington summoned Mr. Massi to a meeting, where he falsely complained that Mr. Massi processed paperwork incorrectly. Mr. Massi also alleges that Mr. Washington attempted to prevent him from attending a PHRC hearing in August 2010 by denying him the use of vacation time.[2]

In September 2010, Mr. Washington allegedly filed a disciplinary complaint against Mr. Massi for insubordination after Mr. Massi refused to meet privately with him. On October 4, 2010, Mr. Massi sought psychological help because the discrimination and retaliation he had suffered since 2003 caused him "stress and anxiety." Mr. Massi also alleges that Mr. Vest, a fellow police officer, assaulted him on March 28, 2011 at the behest of Mr. Washington, and that the City of Philadelphia, the Philadelphia Police Department, Police Commissioner Ramsey, and Deputy Commissioner Bethel all failed to supervise, train, and discipline Mr. Washington.[3]

---

[1] Upon reviewing the complaint, the Court cannot confidently discern what this "tour" entailed or whether it had a negative impact on Mr. Massi.

[2] The complaint does not explain how Mr. Washington exercised such influence even though Mr. Massi was allegedly no longer under his command.

[3] The complaint also alleges that Commissioner Ramsey and Deputy Commissioner Bethel knew that Mr. Washington sexually harassed female police officers, beat an unarmed suspect, and ordered his subordinates to make arrests without probable cause simply so that his jail would be full during a presentation.

### B. Summary of Complaint

Mr. Massi's amended complaint presents 14 counts against seven defendants. The counts are:

- Count 1 -- a § 1983 claim against all the Defendants.

- Counts 2 and 3 -- "all individually named Defendants" discriminated against Mr. Massi on the basis of his race and gender.

- Count 4 -- to hold the City of Philadelphia liable under § 1983 for failing to train and supervise its police officers.

- Count 5 -- the Philadelphia Police Department is liable under Title VI of the Civil Rights Act of 1964 for failing to train and supervise its officers.

- Counts 6, 7, and 8 respectively -- the City of Philadelphia, the Philadelphia Police Department, and Mr. Washington violated Title VII by discriminating against Mr. Massi on the basis of race and gender.

- Count 9 -- all the Defendants are liable under Title VII for creating a hostile work environment.

- Count 10 -- a First Amendment retaliation claim against all the Defendants.

- Count 11 -- all the Defendants are liable for intentional infliction of emotional distress.

- Count 12 -- all the Defendants are liable for conspiring to violate Mr. Massi's civil rights.

- Count 13 -- assault and battery against Mr. Vest.

- Count 14 -- to obtain "permanent injunctive relief" and "demand[] that this Court declare the actions of all Defendants complained of herein to be in violation" of various statutes and constitutional provisions.

### C. Procedural History

Mr. Massi filed a complaint on March 14, 2012, and thereafter filed an amended complaint two week later. On May 5, 2012, the Defendants filed a partial motion to dismiss the complaint. On July 6, 2012, Mr. Massi filed an opposition to the Defendants' motion. Having

received and reviewed the briefs of the respective parties, the Court will now rule on the issues presented by the motion to dismiss.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)

5

(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and quotations omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

## III. Discussion

### A. Count One

In Count 1 of his complaint, Mr. Massi alleges that all the Defendants violated § 1983. "To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Smith v. Sabol*, No. 11-1697, 2012 U.S. Dist. LEXIS 173004, at *5-6 (M.D. Pa. Dec. 6, 2012) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003)). A plaintiff cannot adequately plead a § 1983 claim by merely paraphrasing the statute itself. *See McTernan v. City of York*, 564 F.3d 636, 659 (3d Cir. 2009).

Here, Count 1 consists of nothing more than a formulaic recitation of the elements of a § 1983 claim and two additional paragraphs that are repeated *ad nauseam* throughout Mr. Massi's complaint. Moreover, Count 1 does not specify the particular right, privilege, or immunity that Mr. Massi was allegedly deprived of, and thereby fails to "give the [Defendants] fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citations and quotations omitted). Therefore, the Court will dismiss Count 1 without prejudice.[4] *See Bullock v. Ancora Psychiatric Hosp.*, No. 10-1412, 2011 U.S. Dist. LEXIS 92307, at *14 n.9 (D.N.J. Aug. 18, 2011).

### B. Counts Two and Three

Counts 2 and 3 appear to allege that Mr. Massi suffered discrimination because of his race and gender. However, neither count specifies the statute that gives rise to its claims.[5] This failure deprives the Defendants of "fair notice of what. . . [Mr. Massi's] claim is." *Twombly*, 550 U.S. at 555 (citations and quotations omitted). Therefore, the Court dismisses Counts 2 and 3 without prejudice. *See Thompson v. Eva's Vill. & Sheltering Program*, No. 04-2548, 2006 U.S. Dist. LEXIS 10487, at *24 (D.N.J. Feb. 24, 2006) ("Plaintiff fails to specify which federal statute Defendants allegedly violated. Thus, Plaintiff fails to state a claim for relief.").

### C. Count Five

Count 5 of Mr. Massi's complaint appears to duplicate Count 4, with two exceptions: Count 5 is brought against the Philadelphia Police Department rather than the City of Philadelphia, and it alleges a failure to train and supervise under Title VI rather than under §

---

[4] Counts 4 and 12 also fail to specify the statutory or constitutional right that Mr. Massi seeks to redress. The Court similarly will dismiss those Counts without prejudice to the extent that they purport to arise under § 1983.

[5] The laundry list of statutes set forth at the end of Counts 2 and 3 does not provide the Defendants with adequate notice of Mr. Massi's claims, as the amended complaint generally repeats this list at the end of each count.

7

1983. Presumably, Mr. Massi realizes that the Third Circuit Court of Appeals "treat[s] [a] municipality and its police department as a single entity for purposes of section 1983 liability," *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997), and is thus trying to use Title VI to sue the Police Department rather than § 1983. However, the actual language of Title VI states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program . . . receiving Federal financial assistance." 42 U.S.C. § 2000d. The Court has found no case law indicating that a plaintiff can use this statute to bring a failure to train claim, and Mr. Massi has not identified any such case law. Moreover, allowing Mr. Massi to bring a claim in this manner would do nothing more than subvert the Third Circuit Court of Appeals' holding that "§ 1983 treats a municipality and its police department as the same entity." *Peterson v. City of Uniontown*, 441 F. App'x 62, 62 n.1 (3d Cir. 2011); *Bates v. Paul Kimball Hosp.*, 346 F. App'x 883, 884 n.1 (3d Cir. 2009) (holding same). Therefore, the Court dismisses Count 5 with prejudice.

    **D.    Count Six**

In Count 6 of his complaint, Mr. Massi makes a claim against the City of Philadelphia for discriminating against him based on race and gender in violation of Title VII. Mr. Massi argues that he has pled facts that adequately support this claim because he alleges that Mr. Allen denied him an assignment in the Department's bike patrol unit in 2003. "Discrimination claims under Title VII . . . must be filed within 90 days after the plaintiff receives notice of the EEOC's dismissal of the claim." *Carl v. W.-S. Life Ins. Co.*, No. 09-3990, 2010 U.S. Dist. LEXIS 105891, at *8 (E.D. Pa. Sept. 30, 2010) (citing 42 U.S.C. § 2000e-5(f)(1)); *see also Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) ("Section 2000e-5(f)(1) requires that

claims brought under Title VII be filed within ninety days of the claimant's receipt of the EEOC right to sue letter."). Here, Mr. Massi alleges that he filed an EEOC complaint based on the discrimination that he suffered in 2003, and he also alleges that the EEOC dismissed his complaint in 2008.[6] Because many more than 90 days have passed since the EEOC dismissed Mr. Massi's claim, Mr. Massi cannot base his Title VII claim on the discrimination that he allegedly suffered in 2003. *See Carl*, 2010 U.S. Dist. LEXIS 105891, at *12.

In his opposition to the Defendants' motion to dismiss, however, Mr. Massi argues that the continuing violation doctrine permits him to sue the City of Philadelphia for conduct that would otherwise be time-barred. However, "'the continuing violation theory does not eliminate the requirement that a plaintiff file a judicial action within ninety days of receipt of notice of the right to sue.'" *Graham v. State Farm Mut. Auto. Ins. Co.*, No. 92-2864, 1992 U.S. Dist. LEXIS 13624, at *4 (E.D. Pa. Aug. 24, 1992) (quoting *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 962 (10th Cir. 1991)). Moreover, in *Amtrak v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that the continuing violation doctrine does not apply to discrete acts of discrimination. *Id.* at 114; *see also O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) ("*Morgan* established a bright-line distinction between discrete acts . . . and acts . . . [that] may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitations period or they will not support a lawsuit."). In this case, the 2003 actions alleged in the complaint constitute "discrete acts" and thus cannot support Mr. Massi's Title VII claims. *See O'Connor*, 440 F.3d at 127 (noting that a "denial of transfer" constitutes a discrete act).

---

[6] Mr. Massi does not allege that he somehow failed to receive his right-to-sue letter from the EEOC.

Having held that Mr. Massi cannot bring suit based on the alleged actions of Mr. Allen, the Court must decide whether the remaining allegations in his complaint sufficiently plead a claim for race or gender discrimination under Title VII. The Court recognizes that "a Title VII plaintiff does not need to plead a prima facie case of discrimination because the *McDonnell Douglas* standard is an evidentiary standard, not a pleading standard." *Nardella v. Phila. Gas Works*, No. 09-5629, 2012 U.S. Dist. LEXIS 48798, at *13 (E.D. Pa. Apr. 3, 2012) (citations and quotations omitted). Nonetheless, a plaintiff bringing a Title VII claim "has the burden of pleading sufficient factual matter that permits the reasonable inference that [she] was [discriminated] against because of her race [or] sex." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 (3d Cir. 2010); *see Lucchesi v. Day & Zimmerman Grp.*, No. 10-4164, 2011 U.S. Dist. LEXIS 43183, at *11-12 (E.D. Pa. Apr. 20, 2011) (noting that a complaint arising under Title VII must meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure).

Here, Mr. Massi identifies no post-2003 allegations in his complaint that support his Title VII discrimination claims. *See* Docket No. 21 at 18-19. Moreover, the facts alleged in the complaint do not plausibly suggest that Mr. Massi suffered discrimination because of his race or gender. For example, Mr. Massi alleges that he was transferred to the night shift ahead of five more junior police sergeants, but specifies neither the race nor the gender of these sergeants. Similarly, Mr. Massi alleges that Mr. Washington "repeatedly show[ed] favoritism for American-American police officers." Assuming *arguendo* that Mr. Massi intended to refer to African-American police officers, he has pled no specific facts indicating the manner in which Mr. Washington exhibited favoritism. Finally, Mr. Massi's bald assertion that an unnamed police officer spoke to Mr. Massi on an unspecified date and told him that Mr. Washington

"hates white males" is, without more, insufficient to adequately plead a discrimination claim. Therefore, the Court dismisses Count 6 without prejudice.[7]

### E. Count Eight

Count 8 of the amended complaint attempts to hold Mr. Washington liable under Title VII. The Third Circuit Court of Appeals has long established that individual employees cannot be held liable under Title VII. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("[W]e are persuaded that Congress did not intend to hold individual employees liable under Title VII."); *see Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) ("[I]ndividual employees cannot be held liable under Title VII."). Therefore, the Court dismisses Count 8 with prejudice.

### F. Count Nine

In Count 9 of his complaint, Mr. Massi brings a Title VII hostile work environment claim against all the Defendants.[8] To succeed on this claim, Mr. Massi must allege facts which plausibly suggest that he suffered intentional discrimination *because* of his race or sex. *See Wadhwa v. Sec'y*, No. 12-2723, 2012 U.S. App. LEXIS 24653, at *7-8 (3d Cir. Nov. 27, 2012). In his brief, Mr. Massi asserts that paragraphs 105-107 of his amended complaint support his hostile work environment claim. *See* Docket No. 21 at 26. However, these paragraphs fail to even remotely suggest that Mr. Massi was harassed because he was male or Caucasian. In fact, while the complaint is replete of factual allegations about how Mr. Washington and Mr. Vest mistreated Mr. Massi, it fails to plausibly suggest that this mistreatment occurred due to Mr.

---

[7] Count 7 essentially duplicates Count 6 with one exception: it brings a Title VII claim against the Philadelphia Police Department rather the City of Philadelphia. Therefore, Count 7 fails for the same reasons as Count 6, and the Court also will dismiss the latter count without prejudice.

[8] Preliminarily, the Court dismisses Count 9 with prejudice as to the individual Defendants for the reasons set forth above.

Massi's race or gender. Instead, the complaint alleges that (i) Mr. Washington and Mr. Vest are African-Americans; (ii) that they treated Mr. Massi poorly; and (iii) that Mr. Washington harassed both Mr. Massi and female employees. This latter allegation actually undermines Mr. Massi's gender-based claim. *See Connell v. Nicholson*, 318 F. App'x 75, 77 (3d Cir. 2009) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.") (citations and quotations omitted). Therefore, the Court will dismiss Count 9 without prejudice as to the City of Philadelphia and the Philadelphia Police Department.

### G. Count Ten

Count 10 of the amended complaint raises a First Amendment retaliation claim against all the Defendants under § 1983. *See* Docket No. 21 at 23. Mr. Massi supports this claim by alleging that he filed a union grievance because Mr. Washington illegally transferred him to the night shift, and that Mr. Washington subsequently reassigned officers who were loyal to Mr. Massi and publicly berated Mr. Massi. Furthermore, Mr. Massi alleges that he filed a complaint against Mr. Washington with the EEOC and the PHRC, and that Mr. Washington proceeded to falsely complain that Mr. Massi processed paperwork incorrectly, attempted to prevent Mr. Massi from taking a vacation day to attend his PHRC hearing, and ordered Mr. Vest to assault Mr. Massi.

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). The Defendants' sole argument that Mr. Massi has inadequately pled a retaliation claim against Mr. Washington and Mr. Vest is that Mr. Massi's

EEOC, PHRC, and union complaints do not qualify as speech protected by the First Amendment. *See* Docket No. 14 at 15-16. This defense contention contravenes Third Circuit case law. *See Hill*, 455 F.3d at 242 n.24 ("When a public employee's activity qualifies as 'petitioning the government' – such as filing a grievance pursuant to a collective bargaining agreement, or suing his employer – it is protected activity so long as the petition was not frivolous, or a 'sham,' regardless of whether the petition involved a matter of public concern."); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) (holding that the "filing of [an] EEOC complaint and [an] employment discrimination suit against the . . . [defendant] constituted protected activity under the First Amendment."). Therefore, the Court denies the motion to dismiss Count 10 as to Mr. Washington and Mr. Vest.

With respect to the other individual defendants, Mr. Massi does fail to allege any facts which plausibly suggest that Mr. Allen retaliated against him. As for Commissioner Ramsey and Deputy Commissioner Bethel, "supervisory liability cannot be imposed under § 1983 on a respondeat superior theory," *Justice v. Machtinger*, 733 F. Supp. 2d 495, 500 (D. Del. 2010), and "[i]t is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct," *see Argueta v. U.S. Immigration & Customs Enforcement*. 643 F.3d 60, 71 (3d Cir. 2011). Here, the amended complaint offers conclusory assertions that Commissioner Ramsey and Deputy Commissioner Bethel were "on notice" of Mr. Washington's retaliatory behavior and that Deputy Commissioner Bethel "turned a blind eye" to such behavior, but fails to plead any specific facts to support these assertions. Recognizing that "turning a blind eye" is a figure of speech rather than a description of actual action, the Court holds that such an allegation is not sufficient to permit a retaliation claim against these individuals. Because the complaint's

allegations as to Commissioner Ramsey and Deputy Commissioner Bethel are "conclusory in nature and merely provide[], at best, a 'framework' for . . . factual allegations," they fail to state a claim, and the Court dismisses Count 10 without prejudice as to these individual defendants. *See Argueta*, 643 F.3d at 74.

Finally, Mr. Massi fails to adequately plead a First Amendment retaliation claim against the City of Philadelphia. A plaintiff can adequately plead municipal liability under § 1983 by: (1) alleging that a municipal "employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity"; (2) asserting that an offending "individual has policy making authority rendering his or her behavior an act of official government policy"; or (3) alleging that "an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). Here, Mr. Massi fails to plead facts which plausibly suggest that Mr. Washington or Mr. Vest retaliated against him pursuant to a custom or policy, that they had policymaking authority, or that an individual with such authority ratified their actions. Therefore, the Court dismisses Count 10 without prejudice as to the City of Philadelphia, and dismisses it with prejudice as to the Philadelphia Police Department. *See Peterson*, 441 F. App'x at 62 n.1.

### H. Count Eleven

Count 11 of the amended complaint seeks to hold all the Defendants liable for intentional infliction of emotional distress. Preliminarily, the Court dismisses this count with prejudice as to the City of Philadelphia and the Philadelphia Police Department, because Pennsylvania law generally grants municipalities immunity from intentional tortious conduct. *See Robinson v. Darby Borough*, No. 08-4561, 2010 U.S. Dist. LEXIS 36347, at *4-6 (E.D. Pa. Apr. 13, 2010).

Moreover, the Court dismisses Count 11 without prejudice as to Commissioner Ramsey, Deputy Commissioner Bethel, and Mr. Allen, because the complaint fails to plead facts suggesting "intentional outrageous or extreme conduct" on the part of these defendants. *See Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010); *Jackson v. Lehigh Valley Physicians Grp.*, No. 08-3043, 2009 U.S. Dist. LEXIS 6936, at *30 (E.D. Pa. Jan. 29, 2009) ("[R]acial discrimination alone does not meet the 'extreme and outrageous conduct' standard necessary to state a claim for intentional infliction of emotional distress.") (citations and quotations omitted).

The Court next considers Mr. Massi's intentional infliction of emotional distress claim against Mr. Washington and Mr. Vest. "[I]n order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff." *Evanson*, 615 F.3d at 231 (citations and quotations omitted). Additionally, the defendant's outrageous conduct must cause the plaintiff physical harm. *Id.* Here, Mr. Massi alleges that Mr. Washington harassed him from May 2009 until March 2011, and that this harassment culminated with Mr. Washington and Mr. Vest conspiring to assault Mr. Massi and Mr. Vest committing the assault. Although it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress," *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988), a plaintiff can adequately state a claim for this tort by pleading that a defendant committed a workplace assault, *see Jackson*, 2009 U.S. Dist. LEXIS 6936, at *32-36. Therefore, Mr. Massi has pled facts sufficient to state a claim against Mr. Washington and Mr. Vest for intentional infliction of emotional distress.[9]

---

[9] On this point, the Court notes that the Defendants argue that "employment discrimination does not support an intentional infliction of emotional distress claim." *See*

15

The Defendants also move to dismiss Count 11 because the Pennsylvania Workers Compensation Act (PWCA) "bars IIED claims that arise out of an employment relationship." *Ahmed v. Lowe's Home Ctrs., Inc.*, 346 F. App'x 816, 821 (3d Cir. 2009). However, a personal animus exception to PWCA preemption "permits claims for employee injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment." *Jackson*, 2009 U.S. Dist. LEXIS 6936, at *19-20 (citations and quotations omitted). Here, Mr. Massi's allegation that Mr. Washington and Mr. Vest conspired to assault him describes behavior that falls within the personal animus exception, and the Court will not dismiss Count 11 as to these two defendants. *See id.* at *26 ("Nevertheless, [plaintiff] has alleged at least some specific conduct that brings this claim within the personal animus exception, namely, her physical assault at the hands of [a co-worker].").

## I. Count Twelve

Count 12 alleges that all the Defendants conspired to violate Mr. Massi's civil rights and is the final count of the amended complaint that the Defendants seek to dismiss. Mr. Massi appears to bring this claim under §§ 1983, 1985(3), and 1986. As stated above, Mr. Massi fails to state a claim under § 1983 because he does not specify which right, privilege, or immunity he was deprived of. Moreover, a plaintiff cannot bring a § 1986 claim without adequately pleading a § 1985(3) claim, *see Allen v. Sweeney*, No. 11-5602, 2012 U.S. Dist. LEXIS 166732, at *38, *38 n.10 (E.D. Pa. Nov. 20, 2012), and a § 1985(3) claim requires a plaintiff to plead "that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious," *Farber v. City of Paterson*, 440 F.3d

---

Docket No. 14 at 20. This argument fails because it leaves the complaint's allegations about the assault unaddressed.

131, 135 (3d Cir. 2006).[10] Here, while Mr. Massi alleges that Mr. Washington and Mr. Vest conspired to assault him, he fails to plead facts suggesting that this assault was motivated by invidious discrimination as opposed to their mere personal dislike of him. Therefore, the Court dismisses Count 12 without prejudice.

**IV.    Conclusion**

For the foregoing reasons, the Court grants in part and denies in part the Defendants' motion to dismiss.

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[10] Mr. Massi argues that he satisfies this pleading requirement by alleging that Mr. Allen was motivated by discriminatory animus. *See* Docket No. 21 at 20. However, the complaint includes no allegations which even remotely suggest that Mr. Allen participated in the alleged conspiracy.