IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN J. MASSI, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA et al., | : | No. 12-1309 |
| Defendants. | : | |

## M E M O R A N D U M

PRATTER, J.                                                     DECEMBER 6, 2013

In his Second Amended Complaint ("SAC"), Police Sergeant John Massi brings claims
against the City of Philadelphia ("the City"), Philadelphia Police Commissioner Charles Ramsey,
Deputy Police Commissioner Kevin Bethel, and police officers Anthony Washington, Bruce
Allen, and Dennis Vest.[1] The Defendants move to dismiss the pleading.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Because Mr. Massi's latest complaint changes very little, and nothing material, the Court
will not resummarize the allegations of fact that accompanied the Court's review of his initial
complaint, except where relevant in the discussion below. *See generally Massi v. City of
Philadelphia*, No. 12-1309, 2013 WL 1194643 (E.D. Pa. Mar. 25, 2013). Indeed, only a few of
the counts are at issue here. Mr. Massi has withdrawn Counts 2, 3, and 7, *see* Resp. ¶¶ 15, 23,
which are therefore dismissed with prejudice. He has also "agreed with the Court's ruling
dismissing" Counts 5, 8, and 9, *see* Resp. ¶¶ 16, 24-25, which are likewise dismissed with

---

[1] On March 25, 2013, the Court granted in part and denied in part Defendants' partial motion
to dismiss Mr. Massi's first amended complaint. *Massi v. City of Philadelphia*, No. 12-1309,
2013 WL 1194643 (E.D. Pa. Mar. 25, 2013). The Court then granted Mr. Massi leave to file the
instant Second Amended Complaint, which he filed redlined to show the changes he had made.

prejudice. The Court also deems Count 12 to be withdrawn, and therefore dismissed with prejudice, because "Plaintiff concedes that there is [sic] insufficient facts beyond speculation to infer knowing overt acts by agreement in furtherance of a custom, policy, practice, and/or direct conduct violating the Plaintiff's Constitutional Rights." Resp. ¶ 14. The Defendants do not challenge at this stage Count 11, for intentional infliction of emotional distress against Messrs. Washington and Vest, or Count 13, for assault and battery against Mr. Washington and Mr. Vest.

Thus, the remaining counts for adjudication at this juncture are:

1. Count 1, brought pursuant to 42 U.S.C. § 1983, against "[a]ll Defendants' who are African-Americans knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent conduct" which violated Mr. Massi's "rights to be free from racial discrimination as a Caucasian male police officer at the hands of African-American police officers . . . and to be free from harassment and retaliation because [he] exercised his constitutional rights under the First and Fourteenth Amendments to complain about and seek redress for violations of his constitutional, civil and other rights." SAC ¶ 113.

4. Count 4, brought pursuant to § 1983, against the City of Philadelphia, for its failure "to properly train and supervise Defendants Ramsey, Washington, Bethel, Allen and Vest" and its gross negligence, deliberate indifference, and recklessness "with respect to the potential violation of constitutional rights . . . pursuant to an unconstitutional, custom policy and practice." SAC ¶¶ 125-28.

6. Count 6, brought pursuant to Title VII of the Civil Rights Act of 1964, against only the City of Philadelphia for its "knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and deliberately indifferent" conduct with regard to the discrimination against Mr. Massi "because of race and gender in hiring, transfer and promotions," in favor of "lesser qualified African-American police officers for the bike patrol unit headed by Defendant Allen." SAC ¶ 130. Mr. Massi confirms that, as Count 6 has been rephrased, "the facts relevant to the Plaintiff's discrimination claim must arise from allegations subsequent to April 8, 2008." Resp. ¶ 19; and

10. Count 10, for Defendants' alleged retaliation against Mr. Massi for his filing complaints of discrimination, in violation of the Petition Clause of the First Amendment.

The Defendants have moved to dismiss each of these four counts, namely, 1, 4, 6, and 10.


## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

### III.    DISCUSSION

For the reasons that follow, Count 1, for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, will survive only as to Mr. Allen, and only for a single incident. Count 4, Mr. Massi's *Monell* claim, must fail as deficiently pleaded, although the Court will grant Mr. Massi leave to amend in the event that he can plead facts to bring the single-incident claim within the narrow circumstances articulated below. Mr. Massi's request for reconsideration of Count 6, discrimination in violation of Title VII, is denied. Finally, Count 10, for retaliation in violation of the First Amendment, is dismissed with leave to amend to cure the pleading deficiencies identified below.

#### A.    Intentional Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment and Municipal Liability Under *Monell* (Counts 1 and 4)

##### 1.    Intentional Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment (Count 1)

Mr. Massi's factual allegations are sufficient to establish a claim for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment only as to Mr. Allen, and only for a single incident. "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they received different treatment from that received by other individuals similarly situated." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). A plaintiff's failure to "allege any facts showing that he was treated differently than any similarly situated individuals" is fatal to his equal protection claim. *Slavoski v. Pawlowski*, 462 F. App'x 215, 218 (3d Cir. 2012); *accord, e.g.*, *Vurimindi v. City of Philadelphia*, 521 F. App'x 62, 66 (3d Cir. 2013) (per curiam), *cert. denied*, No. 13-384, 2013 WL 5352481 (Dec. 2, 2013)

("Absent specific allegations as to the allegedly similarly situated parties, [Plaintiff] has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects. Accordingly, [he] failed to state an equal protection claim."); *Gomez v. Feissner*, 474 F. App'x 53, 57-58 (3d Cir. 2012) ("Because [Plaintiff] does not allege that either [Defendant] treated him differently from any similarly situated individuals that actually existed, he fails to state a valid equal protection claim against them."); *Santos v. Sec'y of D.H.S.*, No. 12-4151, 2013 WL 1749474, at *3 (3d Cir. Apr. 24, 2013) (per curiam) ("[T]he amended complaint asserts blanket, non-specific allegations that Santos was treated differently because of his race and/or gender. There are no specific allegations illustrating how Santos was treated differently than those similarly situated. Accordingly, the Equal Protection claims also fail."); *Johnson v. Phila. Hous. Auth.*, 448 F. App'x 190, 193 (3d Cir. 2011) (per curiam) ("Johnson has not pleaded that he was treated differently from any similarly situated person or group.").[2]

Although his Second Amended Complaint is somewhat difficult to parse, the Court has identified the following factual allegations as potentially germane to this analysis; they are provided below along with the Court's analysis of their relevance. With the exception of a sole allegation regarding Mr. Allen, Mr. Massi's factual allegations fail to identify any similarly situated individuals and, further, to establish any reasonable inference of racial discrimination:

- Mr. Massi is Caucasian. SAC ¶¶ 11, 21.

---

[2] To the extent that Mr. Massi also claims sex discrimination, his sole allegations that might be relevant thereto, namely, that "Defendant Washington sexually harassed Sgt. Massi by inquiring: 'are you getting any p—y here. . . I hear Lt. LaSalle gets a lot of p—y,'" SAC ¶ 37; that "[f]rom May 19, 2009 through June 9, 2009 Defendant Washington continued to make lewd comments towards female officers in Sgt. Massi's presence and groping himself," SAC ¶ 38; and that "[w]hile driving to the PDU in Defendant Washington's car, he had his aide slow down behind a female walking so he could stare at her buttocks and appeared agitated that Sgt. Massi was not participating with him," SAC ¶ 46, notwithstanding whatever they might disclose about Mr. Washington's vocabulary and imagination, do not remotely suggest that Mr. Massi was discriminated against because he is a man.

- Mr. Washington, Mr. Allen, and Mr. Vest are African-Americans. SAC ¶¶ 16-18. The racial identities of the parties, standing alone, is far from sufficient to establish any reasonable inference of racial discrimination.

- Mr. Massi conclusorily asserts, "As averred hereinafter, Sgt. Massi complains of an ongoing and pervasive pattern of discrimination, retaliation, harassment and otherwise illegal conduct by several supervisory and high ranking African-American police officials and African-American police officers at the City of Philadelphia Police Department against him for many years . . . ." SAC ¶ 20. This allegation is conclusory and will not be credited, even at the motion to dismiss stage, except to the extent that it might summarize allegations of fact.

- Mr. Allen "denied Sgt. Massi the right to work an overtime detail at a local grocery store" on May 2, 2003, even though Mr. Allen "expressly approved overtime assignments for and permitted African-American police officers to work second jobs." SAC ¶ 24. This allegation sufficiently demonstrates differential, and therefore potentially discriminatory, treatment of Mr. Massi as compared with that of similarly situated African-American officers.

- In 2003, Mr. Allen "denied Sgt. Massi an assignment in the Police Department's Bike Patrol Unit after working in that unit for several years," and when Mr. Massi asked him why, Mr. Allen responded, "I want only my people in the Bike Patrol Unit." SAC ¶¶ 25-26. This allegation, when taken alone, does not sufficiently suggest racial discrimination. The Court will not infer that "my people" refers to African-Americans to the exclusion of individuals who identify as members of a different race in the absence of any allegations of similarly situated individuals of another race or other evidence of Mr. Allen's use of such a reference.

- Mr. Allen was "a member of the Police Department's Guardian Civic League, a predominately African-American organization." SAC ¶ 27. Mr. Allen's membership in what is apparently a nongovernmental organization does not plausibly support the inference that he discriminated against Mr. Massi because Mr. Massi is white.

- An "African-American police officer who was familiar with Defendant Washington's behavior confided in Sgt. Massi that Defendant Washington 'hates white males.'" SAC ¶ 36. As the Court explained before in this litigation, albeit with regard to a Title VII claim, "Mr. Massi's bald assertion that an unnamed police officer spoke to Mr. Massi on an unspecified date and told him that Mr. Washington 'hates white males' is, without more, insufficient to adequately plead a discrimination claim." *Massi*, 2013 WL 1194643, at *6.

- Mr. Washington "[d]iscriminat[ed] against Sgt. Massi by excluding him from African-American only police officer meetings." SAC ¶ 41(g). This allegation is insufficient. For instance, it is not clear what harm, if any, flowed from the alleged exclusion; nor is it clear that these meetings were official as opposed to meetings of an affinity group (i.e., whether the state action/under color of law is met).

- Mr. Washington "[r]epeatedly show[ed] favoritism for American-American police officers." SAC ¶ 41(m). Again, as the Court stated in its prior opinion in this case, "Assuming *arguendo* that Mr. Massi intended to refer to African-American police officers, he has pled no specific facts indicating the manner in which Mr. Washington exhibited favoritism." *Massi*, 2013 WL 1194643, at *6.

- Mr. Bethel, a Police Commander, "was supposed to discipline Defendant Washington, but instead turned a 'blind eye' to Defendant Washington [sic] racism, retaliation and harassment directed towards Sgt. Massi," and instead "warned Sgt. Massi that 'he [Defendant Washington] is my friend—don't f— with him." SAC ¶¶ 48-49. Even if the Court accepts as true that Mr. Bethel made the alleged comment, that comment does not compel as reasonable the inference that Mr. Bethel ignored racial discrimination, retaliation, and harassment by Mr. Washington. To the contrary, the allegations in the Second Amended Complaint, and especially those discussed above, do not establish that Mr. Washington racially discriminated against Mr. Massi. These allegations regarding Mr. Bethel are derivative of those against Mr. Washington, and, because those against Mr. Washington are insufficient, those against Mr. Bethel are necessarily insufficient as well.

- Mr. Massi was transferred to the graveyard shift without 30 days' notice and ahead of "five sergeants with less time in rank than Sgt. Massi who should have been transferred before Sgt. Massi." SAC ¶¶ 53-54. He was also "denied vacation days." SAC ¶ 55. But Mr. Massi identifies no similarly situated comparator individuals of a different race; there is nothing about these allegations that reasonably suggests that Mr. Washington's transfer of Mr. Massi, or Mr. Washington's denial of Mr. Massi's vacation days, if they occurred, was motivated by race as opposed to, for example, personal animosity.

As the foregoing allegations and this Court's analysis demonstrate, Mr. Massi cannot make out a race discrimination claim against any Defendant except for Mr. Allen, and against him, Mr. Massi can make out a race discrimination claim only on the basis that Mr. Allen allegedly "denied Sgt. Massi the right to work an overtime detail at a local grocery store" on May 2, 2003, even though Mr. Allen "expressly approved overtime assignments for and permitted African-American police officers to work second jobs." SAC ¶ 24. The allegations against the other Defendants are only conclusory or otherwise insufficient. Count 1 is therefore dismissed as to all Defendants except Mr. Allen.

### 2.  Municipal Liability Under *Monell* (Count 4)

Count 4, Mr. Massi's claim ostensibly under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (along with any *Monell* claim raised in Count 1), must also fail. As the Supreme Court has instructed, "neither *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because the only constitutional harm properly pleaded here is Mr. Allen's alleged differential treatment of Mr. Massi and similarly situated African-American police officers, the only underlying constitutional violation upon which Mr.

Massi can rely for his *Monell* claim, pursuant to *City of Los Angeles v. Heller*, is Mr. Allen's single incident of alleged misconduct.

Under *Monell*, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694. Section 1983 does not permit municipalities to be held liable on a *respondeat superior* theory. *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). More specifically, as the Third Circuit Court of Appeals has explained,

> a municipality may only be liable for the torts of its employees in one of three ways: First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (citations omitted). Mr. Massi has not alleged that the City of Philadelphia had a formal policy or standard operating procedure of denying white officers overtime (or any other discriminatory policy or procedure). He has not alleged that Mr. Allen had policymaking authority. And he has not alleged, at least not in any more than a conclusory manner, that any official with sufficient authority ratified Mr. Allen's actions that Mr. Massi challenges here, let alone was aware of them.

To the extent that Mr. Massi seeks to bring his *Monell* claim on the slightly more specific ground of failure to train or supervise, as suggested in Count 4, his allegations are also insufficient.[3] Failure to train or supervise claims are subject to rigorous scrutiny to ensure that

---

[3] Although the discussion below predominantly uses the term "train," there is no indication that the distinction between "train" and "supervise" has any operative legal force. *See, e.g.*, *Christopher v. Nestlerode*, 240 F. App'x 481, 489 n.6 (2007) ("Christopher contends Hose and

"the identified deficiency in a city's training program [is] closely related to the ultimate injury." *Harris*, 489 U.S. at 391. The causation question is, "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id.* Although these questions present issues of fact, *see id.*, courts may step in to prevent cases from moving forward if the plaintiff cannot meet such "standards of fault and causation"; otherwise, the wolf of *respondeat superior* liability would slip by clad in the fleece of the *Monell* sheep. *See id.* at 391-92; *accord Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

The failure to train claim is one of deliberate indifference: "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). Thus, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Alternatively, a plaintiff may attempt to establish the municipality's deliberate indifference based on a theory of "'single-incident' liability," but only "'in a narrow range of circumstances,'" discussed only hypothetically, on account of their rarity, by the Supreme Court in *City of Canton v. Harris*, 489 U.S. at 390 n.10, *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 409, and again in *Connick v. Thompson*, 131 S. Ct. at 1360-61, in which "the unconstitutional consequences of failing to train could be so patently obvious that a

the County were liable for failure to promulgate policies, failure to train, and failure to monitor or supervise. We apply the same 'deliberate indifference' standard to all three arguments. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (noting 'courts have adopted the "deliberate indifference" standard in other policy and custom contexts').").

city could be liable under § 1983 without proof of a pre-existing pattern of violations," *Connick*,

131 S. Ct. at 1361. But, the Supreme Court has reiterated, circumstances in which a single

incident will suffice will be "rare." *Id.* Thus, in *Connick*, the Court laid down a categorical rule—

i.e., not one that appeared to depend much on the particular circumstances of that case—for

single-incident liability claims regarding municipalities' alleged failure to train prosecutors

regarding *Brady* violations:

> In light of this regime of legal training and professional responsibility
> [required for individuals to pass the bar and become attorneys], *recurring
> constitutional violations are not the "obvious consequence" of failing to provide
> prosecutors with formal in-house training about how to obey the law*. [*Brown*],
> 520 U.S., at 409. Prosecutors are not only equipped but are also ethically bound to
> know what *Brady* entails and to perform legal research when they are uncertain. A
> district attorney is entitled to rely on prosecutors' professional training and ethical
> obligations in the absence of specific reason, such as a pattern of violations, to
> believe that those tools are insufficient to prevent future constitutional violations
> in "the usual and recurring situations with which [the prosecutors] must deal."
> *Canton*, 489 U.S., at 391. *A licensed attorney making legal judgments, in his
> capacity as a prosecutor, about* Brady *material simply does not present the same
> "highly predictable" constitutional danger as* Canton'*s untrained officer*.

*Connick*, 131 S. Ct. at 1363 (emphases added) (footnote omitted). The Court then further

explained the rationale for the narrow hypothetical in which a single incident would be enough

because the need to train would be "so obvious":

> A second significant difference between this case and the example in *Canton* is
> the nuance of the allegedly necessary training. The *Canton* hypothetical assumes
> that the armed police officers have no knowledge at all of the constitutional limits
> on the use of deadly force. But it is undisputed here that the prosecutors in
> Connick's office were familiar with the general *Brady* rule. Thompson's
> complaint therefore cannot rely on the utter lack of an ability to cope with
> constitutional situations that underlies the *Canton* hypothetical, but rather must
> assert that prosecutors were not trained about particular *Brady* evidence or the
> specific scenario related to the violation in his case. That sort of nuance simply
> cannot support an inference of deliberate indifference here. As the Court said in
> *Canton*, "[i]n virtually every instance where a person has had his or her
> constitutional rights violated by a city employee, a § 1983 plaintiff will be able to
> point to something the city 'could have done' to prevent the unfortunate incident."
> 489 U.S., at 392 (citing *Tuttle*, 471 U.S., at 823, 105 S. Ct. 2427 (plurality
> opinion)).

*Connick*, 131 S. Ct. at 1363.

Here, there is no analogous admission that Mr. Allen was familiar with the Constitution's prohibition on racial discrimination. But that cannot be the end of the matter. It is not enough for Mr. Massi to make the conclusory allegation, "As a result of Defendant City of Philadelphia's knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent, recklessly and *deliberately indifferent* concerted conduct under the color of state law pursuant to an unconstitutional, custom policy and practice," he was injured, Compl. ¶ 127, or that the City "was grossly negligent, deliberately indifferent and reckless with respect to the potential violation of constitutional rights," Compl. ¶ 126. As the listing of all types of mental state demonstrate, these allegations are nothing more than conclusory assertions that the City was *or should have* been aware of the danger of failing to train or supervise Mr. Allen regarding racial discrimination.

But that allegation is not enough. Mr. Massi's allegations regarding actual knowledge or intent are wholly conclusory, and if the contention is that the City *should have* been aware of conduct like Mr. Allen's, then Mr. Massi must allege facts to show a pattern of behavior such that the City was on constructive notice (he has not), or, if instead he relies only on the single incident (apparently the case here, with Mr. Allen's alleged discrimination), Mr. Massi must meet the Supreme Court's "so patently obvious" requirement. Another articulation of the failure to train standard will help to show why this is. The plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne County*, 660 F.3d 169, 179-80 (3d Cir. 2011) (citation omitted). Logically, under a single-incident liability

13

theory, the situation cannot involve a history of employees mishandling a situation, but rather their confronting a difficult choice. And indeed, this characterization is consistent with the Supreme Court's distinction in *Connick* of the *Canton* deadly force hypothetical's assumption "that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force." *Connick*, 131 S. Ct. at 1363.

The application of such a requirement here, for the Court to allow the failure to train claim to survive, would compel the Court to make the predicate assumptions that it should have been obvious that Mr. Allen did not know that he could not discriminate against Mr. Massi on the basis of race, and therefore the conclusion that the City was on constructive notice of the need to train him on that issue, and that its failure to provide such training rendered it deliberately indifferent to the "known or obvious consequence" of failing to provide such training, namely, discrimination such as Mr. Allen's alleged overtime denial. *Id.* at 1360 (quoting *Brown*, 520 U.S. at 410); *see also Harris*, 489 U.S. at 390 ("But it may happen that in light of the duties assigned to specific officers or employees *the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights*, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." (emphasis added)).

Absent any factual allegations to back up this claim, the inference that it was obvious that Mr. Allen's failure to be trained regarding the unconstitutionality of racial discrimination would result in Mr. Massi's alleged harm is simply not plausible and cannot survive *Twombly* and *Iqbal*'s pleading requirements. The required inference is not reasonable at a variety of turns: for instance, it is not plausible, without an actual factual allegation that must be accepted as true, that Mr. Allen did not know that racial discrimination is unconstitutional, and it is not plausible that

14

the City's failure to train him on that point was what caused the alleged unconstitutional

discrimination. "The law is clearly established that employment discrimination by a municipality

and/or its officers on the basis of race violates Title VII, § 1981, and the Equal Protection

Clause." *Jackson v. City of Centreville*, 899 F. Supp. 2d 1209, 1221 (N.D. Ala. 2012) (citing

*Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995)); *see id.* ("The court finds that the 'proper

response'—race discrimination is not allowed—is obvious to all without any special training.");

*see also Dennis v. DeJong*, 867 F. Supp. 2d 588, 656-57 (E.D. Pa. 2011) ("Plaintiffs[] have not

pled any facts supporting the inference that any of the nine allegations above were constitutional

injuries which were highly predictable or patently obvious. Accordingly, I dismiss Count X

without prejudice . . . ."); *Hudson v. City of Riviera Beach*, No. 12-80870, 2013 WL 6017282, at

*7-8 (S.D. Fla. Nov. 13, 2013) (dismissing a failure to train claim as not falling within the

"narrow range of circumstances" contemplated by the Supreme Court's hypothetical); *Toliver v.

City of New York*, No. 10-5806, 2012 WL 6849720, at *7-8 (S.D.N.Y. R&R Sept. 25, 2012)

("[T]he complaint fails to provide any factual allegations relating to the City's training program

or suggestion that the City's policy-makers deliberately ignored the risk that its employees would

unconstitutionally apply its policies without more training. . . . [E]ven a reduced pleading

standard would not save Mr. Toliver's complaint. . . ." (citations and internal quotation marks

omitted)), *adopted in full*, 2013 WL 146088 (S.D.N.Y. Jan. 14, 2013); *cf. McTernan v. City of

York*, 564 F.3d 636, 658-59 (3d Cir. 2009) ("Equally fatal, the four allegations in the complaint

relevant to McTernan's *Monell* claim fail to allege conduct by a municipal decisionmaker. . . .

McTernan's complaint simply paraphrases § 1983 [and] does not adequately plead a custom or

policy, or a link between the challenged restriction and a municipal decisionmaker . . . .");

*Washington v. City of Philadelphia*, No. 11-3275, 2012 WL 85480, at *7-8 (E.D. Pa. Jan. 11,

2012) ("Plaintiff's municipal liability claims fail Rule 8's notice pleading requirement under *Iqbal* and *Twombly*. Plaintiff's allegations are conclusory . . . . Aside from the single incident of alleged police misconduct, the complaint pleads no other facts necessary to establish a municipal liability claim."); *Kucera v. Tkac*, No. 12-264, 2013 WL 1414441, at *9 (D. Vt. Apr. 8, 2013) ("Plaintiff's conclusory allegations that Hartford has failed to train its police officers do not constitute facts which demonstrate that the need for training was obvious such as there were proof of repeated complaints of similar civil rights violations followed by no meaningful attempt on the part of [Hartford] to investigate or to forestall such incidents." (citation and internal quotation marks omitted)); *Solomon v. Tatum*, No. 10-319, 2011 WL 4531341, at *4 (N.D. Fla. R&R Aug. 18, 2011) ("In his amended complaint, he does not allege facts suggesting that the conduct of Deputy Kelly was due to a particular omission in the training program of the Liberty County Sheriff's Office. . . ."), *adopted*, 2011 WL 4529142 (N.D. Fla. Sept. 28, 2011).

Moreover, it would not be enough for purposes of allowing Mr. Massi to prevail on Count 4 for him to *prove* "that additional training would have been helpful in making difficult decisions," or that "'an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.'" *Connick*, 131 S. Ct. at 1363-64 (alteration in original) (quoting *Harris*, 489 U.S. at 391). It also cannot be enough simply to allege these things, either; instead, Mr. Massi would have had to plead at least some factual content from which the Court can reasonably infer that a particular training would have prevented the alleged harm. *See also Harris*, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Thus, the Court will dismiss Count 4 without prejudice and, although the circumstances are narrow indeed—for the reasons discussed above, and especially with regard to a racial discrimination claim such as this, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Connick*, 131 S. Ct. at 1359—the Court will permit Mr. Massi to replead the failure to train or supervise claim, based on the alleged incident of discrimination by Mr. Allen. *See, e.g.*, *Dennis*, 867 F. Supp. 2d at 657 ("I dismiss Count X without prejudice, and I permit plaintiffs to re-plead their failure to train claims consistent with the above-identified standard."); *Harris v. Clearlake Police Dep't*, No. 12-0864, 2012 WL 3042942, at *6 (N.D. Cal. July 25, 2012) ("If Plaintiff seeks to amend this claim, he must provide facts—not merely conclusions or speculation—regarding the 'official policy,' 'long-standing practice or custom,' or faulty training program that resulted in the arresting of individuals without probable cause or how the policy was deliberately indifferent to Plaintiff's rights. These facts must be sufficiently stated such that the Court may reasonably infer that there is a plausible claim." (citation omitted)); *cf. Jackson*, 899 F. Supp. at 1221 (granting summary judgment where "Plaintiffs have not argued or presented any evidence upon which the court could infer that Murphy or other City officers and employees are unfamiliar with federal laws prohibiting racial discrimination in employment or that such individuals, in the absence of training, had no way to obtain that knowledge.").

**B.      Reconsideration of Mr. Massi's Title VII Claim (Count 6)**

Count 6 fails because, as the City argues, it is time-barred. This Court has already dismissed Count 6 on this very same basis, and requests for reconsideration, whether under Federal Rule of Civil Procedure 59(e) or 60(b), are subjected to relatively stringent standards.

None of the grounds for reconsideration under either Rule is apparent to the Court here, and Mr. Massi has not raised any arguments in support of reconsideration. *See* Response ¶ 21.[4]

In any case, even if reconsideration were proper, the Court would reach the same conclusion. *See Massi*, 2013 WL 1194643, at *5-6. Mr. Massi requests reconsideration based solely on what he calls "discrimination based on race as it relates to conduct and facts from 2008 forward," Resp. ¶ 21, and "submits that through a totality of circumstances in conjunction with the allegation in paragraph 130 of the Amended Complaint that lesser qualified African American Police Officers were promoted over Plaintiff who is Caucasian, discrimination based on race is a reasonable inference."

The Court cannot agree with Mr. Massi's assertion. First, the Court has already considered all of the relevant allegations, as set out above with regard to Mr. Massi's equal protection claim, and found all but Mr. Allen's denial of overtime wanting. Second, the only allegation that Mr. Massi specifically refers to in his Response appears to be none other than the 2003 bike unit incident with Mr. Allen—that is, an event that occurred well before 2008. *Compare* SAC ¶ 130 ("discriminating against him in the promotion and hiring of lesser qualified African-American police officers *for the bike patrol unit headed by Defendant Allen*" (emphasis

---

[4] Neither Rule appears to provide Mr. Massi an opportunity to relitigate Count 6. First, "[a] proper Rule 59(e) motion [for reconsideration] . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Scott v. Ebbert*, 485 F. App'x. 526, 528 (3d Cir. 2012) (internal quotation marks omitted). None of these three prongs seems to be met here. Second, "Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence," *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005) (citing Fed. R. Civ. P. 60(b)), as well as the fact that the judgment is void, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (citing Fed. R. Civ. P. 60(b)(4)). But under Rule 60(b)(4), "[a] judgment is not void . . . simply because it is or may have been erroneous." *Espinosa*, 559 U.S. at 270 (internal quotation marks omitted). Thus, it is not appropriate for the Court to reconsider the merits of its holding. And by their terms, none of the other Rule 60(b) narrow exceptions to finality apply.

added)), *with* SAC ¶ 25 ("*in 2003*, Sgt. Allen wrongfully and maliciously denied Sgt. Massi an assignment in the Police Department's Bike Patrol Unit" (emphasis added)). Count 6 must therefore be dismissed. *See Massi*, 2013 WL 1194643, at *5-6.

### C.      Retaliation in Violation of the First Amendment (Count 10)

Count 10, for retaliation in violation of the First Amendment, presents a more complicated question. The Defendants contend that under *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011), Mr. Massi's First Amendment retaliation claim must be dismissed as an employee grievance that does not raise a matter of public concern. The Court agrees that, as Mr. Massi has pleaded his claim, his allegations are insufficient under *Guarnieri*. However, based on the arguments and information averred in Mr. Massi's Response, the Court will afford him the opportunity to amend his Second Amended Complaint to include this and any other pertinent information in a Third Amended Complaint, should he petition for leave to file one.[5]

In *Guarnieri*, the Supreme Court reversed the Third Circuit Court of Appeals' holding that the public concern test did "not limit [First Amendment] Petition Clause claims by public employees." *Guarnieri*, 131 S. Ct. at 2491-92. The Court held that the framework established by *Connick v. Myers*, 461 U.S. 138 (1983), and *Pickering v. Board of Education*, 391 U.S. 563 (1968), for retaliation against government employees for expression protected the First Amendment's Speech Clause, also applies to retaliation for a government employee's exercise of his rights under the Amendment's Petition Clause. *Guarnieri*, 131 S. Ct. at 2500-01. True, as the City argues, the Petition Clause does not confer upon government employees "a right to

---

[5] If Mr. Massi so petitions, he should submit a clean copy of the proposed pleading in full *as well as* a redlined copy of his Third Amended Complaint, and the Third Amended Complaint should also take into account the survival or demise of the other counts, as provided in this Memorandum and its accompanying Order.

transform everyday employment disputes into matters for constitutional litigation in the federal courts"; thus, if "[a] petition that involves nothing more than a complaint about a change in the employee's own duties does not relate to a matter of public concern and accordingly may give rise to discipline without imposing any special burden of justification on the government employer." *Id.* at 2501 (citation and internal quotation marks omitted). But, "[a]s under the Speech Clause, whether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], *as revealed by the whole record*.'" *Id.* (emphasis added) (quoting *Connick*, 461 U.S. at 147-48 & n.7).

The rule that whether a petition relates to a matter of public concern must be determined on the "whole record" militates strongly against deciding its application in any particular case at the motion to dismiss stage. Of course, such an early decision will nonetheless be possible in cases in which the facts alleged, when taken as true, do not establish that the government employee's grievance or petition related to a matter of public concern. After all, *Connick* clarified that "[t]he inquiry into the protected status of speech is one of law, not fact." 461 U.S. at 148 n.7. And in *Guarnieri*, the Supreme Court noted that certain factors would weigh in one direction or the other—for instance, "[t]he forum in which a petition is lodged will be relevant to the determination of whether the petition relates to a matter of public concern," *id.* at 2501 (citing *Snyder v. Phelps*, 131 S. Ct. 1207, 1217 (2011)), and "[a] petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context," *id.* But the ultimate question a court must answer, before it can move to a *Connick–Pickering* balancing of the government's versus the employee's interests, *see Rankin v. McPherson*, 483 U.S. 378, 388

(1987), is whether the speech or petition[6] relates to a matter of public concern, i.e., to "something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication," *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) (per curiam). Even private statements on certain matters can relate to matters of public concern sufficient to acquire this First Amendment protection. *See Rankin*, 483 U.S. at 376-78. "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder*, 131 S. Ct. at 1216.

Here, Mr. Massi's claim must fail, but largely on a pleading technicality. The Court can accept as true, and draw reasonable inferences from, only those factual allegations contained in Mr. Massi's Second Amended Complaint, not those contained elsewhere, such as in his Response to the Motion to Dismiss. Thus, as much as the Court disfavors making a dispositive determination at the motion to dismiss stage, it finds that Mr. Massi's Second Amended Complaint lacks the specificity necessary for the Court to determine whether as a matter law, if the facts alleged are taken as true, Mr. Massi's statements in grievances or other filings would relate to a matter of public concern. The only relevant allegations the Court can glean from Mr. Massi's latest pleading are:

---

[6] Because the *Guarnieri* Court applied the same *Connick–Pickering* test to the Petition Clause as applies to the Speech Clause, this Court need not decide which of the two Clauses Mr. Massi's alleged filings might, or even might be alleged to, fall under. The Supreme Court did not delineate the precise boundaries of the Petition Clause: "Although retaliation by a government employer for a public employee's exercise of the right of access to the courts may implicate the protections of the Petition Clause, this case provides no necessity to consider the correct application of the Petition Clause beyond that context." *Guarnieri*, 131 S. Ct. at 2494; *see also, e.g.*, *id.* at 2502 (Thomas, J., concurring) ("First, even assuming the grievance was a petition . . . .").

- Mr. Washington "[t]hreaten[ed] to retaliate against Sgt. Massi for asserting his constitutional rights to file a grievance." SAC ¶ 41(o);

- "On September 2, 2009, Sgt. Massi contacted the Fraternal Order of Police . . . and filed a grievance for a violation of the FOP Contract (e.g., being given a 14 day notice) for a shift change mid-year and violating the seniority rules (five other Sergeants with less seniority should have been transferred first)." SAC ¶ 56. "In response, Defendant Washington escalated his campaign of retaliation and harassment against Sgt. Massi." SAC ¶ 57.

- "On March 18, 2010, Sgt. Massi filed a harassment/discrimination complaint against Defendant Washington with the PHRC and the EEOC." SAC ¶ 68. "In his complaint, Sgt. Massi alleged the incidents described above." SAC ¶ 69. Afterwards, Defendant Washington seems to have retaliated by putting Mr. Massi on the "DPR 3x11 tour." SAC ¶ 70.

- Defendants retaliated against Mr. Massi "because of protected activity of filing prior complaints alleging race and gender discrimination in the hiring, transferring and promoting police officers and because of Sgt. Massi's membership in a protected class (Caucasian male) . . . ." SAC ¶ 137.

Mr. Massi presses his First Amendment retaliation claim against only Messrs. Washington and Vest, and the Defendants do not challenge that whatever subsequent conduct Messrs. Washington and Vest engaged in as otherwise sufficiently retaliatory;[7] rather, they

---

[7] Of course, Mr. Massi will also face an additional causation requirement at a later stage of this litigation even if he can sufficiently plead his First Amendment retaliation claim. He will have to meet a certain burden to show that the actions taken by Messrs. Washington and Vest were in fact retaliatory—i.e., that they took the actions because of Mr. Massi's protected conduct and not for some other reason. As the Supreme Court explained in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977),

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor" or to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board

contest that Mr. Massi's "grievances and agency charges" "'seek to communicate to the public or to advance a political or social point of view beyond the employment context.'" Mot. Dismiss at 12 (quoting *Guarnieri*, 131 S. Ct. at 2501). And on this point, the allegations fall short. With the allegation that Defendants retaliated against Mr. Massi because of his filing complaints alleging race and gender discrimination, Mr. Massi has nearly made out a claim for First Amendment retaliation under *Guarnieri*. (Of course, ultimately, that determination cannot be made without the "whole record," but even at the motion to dismiss stage the plaintiff must allege enough to open the doors of discovery to let him compile that record.) What is missing here, however, is factual content that, if proven true, would establish this context and record; and in particular, it is unclear which "complaints" Mr. Massi is referring to in ¶ 130, because ¶¶ 41, 56, and 57 in fact fail under *Guarnieri*'s public vs. private concern rule, and ¶ 70 is but a conclusory assertion that the content of the complaints leading to the retaliation related to "the incidents described above"—whatever those incidents might have been. This is not to say that the content of the complaints and/or grievances forming the basis for the retaliation claim must themselves have been meritorious, but merely that they must relate to a matter of public concern, as required by *Guarnieri*. As the Second Amended Complaint is currently pleaded, however, even by accepting Mr. Massi's factual allegations as true, the Court cannot make that determination in the affirmative.

However, on this point the Court will grant Mr. Massi leave to file a Third Amended Complaint to restate his First Amendment retaliation claim because it is possible that with some

---

had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

*Id.* at 287 (footnote omitted).

modification to his pleadings, Mr. Massi could adequately plead such a claim. Indeed, the arguments and information in his Response suggest as much, but the Court cannot rely on them in testing the sufficiency of his Second Amended Complaint. Mr. Massi's Response states, for instance, that Mr. Massi's grievances or filings (or other activity falling within the Petition Clause) brought to the fora's attention:

- "the improper use of Police Officers in service of process" (citing to SAC ¶ 50);

- "A Police Captain who gropes his genitals around female Police Officers" (citing to SAC ¶ 38); and

- "A Police Captain who viciously assaults citizens, and arrests African Americans without Probable Cause" (citing SAC ¶ 107).

Response ¶ 31. Further, Mr. Massi points out in his Response that "[i]n fact the Plaintiff's account of his experience and grievances under the Command of Defendant Washington was reported in the Daily News, which specifically alerted the Public to a pervasive pattern of sexual harassment and other misconduct related to the Defendant Washington . . . ." Response ¶ 30 n.1.

This information, along with any other relevant information relating to the *Guarnieri–Connick–Pickering* public concern test, belongs in Mr. Massi's Second Amended Complaint, not in his Response. Moreover, even the Second Amended Complaint and the Response taken together still leave the Court unable to determine what incidents Mr. Massi reported in what grievances, filings, or complaints, and to whom. A conclusory allegation that Mr. Massi reported "the incidents described above," SAC ¶ 69, especially when it seems fairly clear that Mr. Massi's Fraternal Order of Police grievance, for example, was purely personal, is insufficient to allege that Mr. Massi's Petition Clause activity related to a matter of public concern and therefore inadequate to state a claim for First Amendment retaliation. (That is, it is unclear if the allegations bulleted immediately above were actually part of Mr. Massi's petitioning activity.)

But because the Court perceives that proper pleading of this information might allow Mr. Massi to plead such a claim, he shall have leave to file a Third Amended Complaint should he petition for leave to do so. Count 10 is therefore dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, Counts 2, 3, and 5 through 9, as well as 12, are dismissed with prejudice. Count 1, for racial discrimination in violation of the Fourteenth Amendment, may proceed against Mr. Allen only, but is otherwise dismissed with prejudice, and Count 4 is dismissed without prejudice as to a failure to train or supervise theory predicated on Mr. Allen's alleged racial discrimination of Mr. Massi and with prejudice in all other respects. Count 10, for First Amendment retaliation, is dismissed without prejudice as to Messrs. Washington and Vest, and with prejudice as to all other Defendants. Count 11, for intentional infliction of emotional distress, may, pursuant to this Court's prior opinion, proceed against only Messrs. Washington and Vest, *Massi*, 2013 WL 1194643, at *8-9, and Count 13, for assault and battery, may proceed against Mr. Vest. Accordingly, the City of Philadelphia and Messrs. Charles H. Ramsey and Kevin Bethel are dismissed as Defendants. An Order consistent with this Memorandum follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

25